THE WHEELER & WILSON MANUFACTURING COMPANY, PLAINTIFF, *v.* WILLIAM E. KEELER, AS SHERIFF OF CAYUGA COUNTY, AND ANOTHER, DEFENDANTS.

*Sales — waiver of a condition — fraud — mere insolvency is not — statement of the debtor's financial condition — proof of other frauds — the debtor's financial condition at another time.*

In the latter part of July, 1890, the Wheeler & Wilson Manufacturing Company sold certain sewing machines to the Rheubottom & Teall Manufacturing Company under an agreement that the latter should give for the price thereof a good eleven months' note when the bill was rendered, without waiting for the machines to be set up. A bill was rendered, no note was given, and the machines were shipped and set up, and the sheriff of Cayuga county having levied, in December, 1891, upon the machines, under executions against the Rheubottom & Teall Manufacturing Company, the vendors brought an action of replevin for the recovery of the machines against the vendees and one Thomas Jones, the holder of a chattel mortgage upon the property.

*Held,* that, regarded as a conditional sale, the condition that a note should be given was waived by an unconditional delivery of the machines.

The vendors also attacked the sale on the ground of fraud.

*Held,* that the knowledge of the vendee that it was insolvent, in the absence of evidence that it intended not to pay for the property when it purchased, did not constitute fraud.

The plaintiff offered in evidence a written statement, signed and verified by the president of the vendee, made in July, 1890, to a banking firm, which purported

to have been made to obtain additional credit. The plaintiff offered to show that the statement was false, but offered no proof that any increase or renewal of credit was actually given to or applied for by the vendee upon the faith of the statement.

*Held,* that the evidence offered was properly excluded.

That the rule, which allows evidence to be given of other frauds committed by the party about the same time, should not be extended.

That an offer to show the total assets of the vendee in December, 1890, unconnected with any proof of its condition at the time of the sale, was too remote and was properly excluded.

EXCEPTIONS of the plaintiff, the Wheeler & Wilson Manufacturing Company, taken upon a trial had at the Cayuga Circuit before the court and a jury, at which the plaintiff was nonsuited, and its exceptions were directed to be heard in the first instance at General Term, judgment in the meantime to be suspended.

The action was brought to recover the possession of certain chattels, the sale of which was made, as alleged in the complaint, to the Rheubottom & Teall Manufacturing Company in the latter part of July, 1890, and the delivery in August, 1890.

The answer alleged that on and after December 13, 1891, the sheriff of Cayuga county levied upon the chattels in question under certain executions issued upon judgments against the Rheubottom & Teall Manufacturing Company in favor of various persons. The answer of Thomas Jones, also a defendant, alleged that he held a chattel mortgage upon the chattels in question, which had been given to him by the Rheubottom & Teall Manufacturing Company on December 4, 1890.

*J. W. O'Brien,* for the plaintiff.

*C. I. Avery,* for the defendant Keeler.

*E. C. Aikin,* for the defendant Jones.

DWIGHT, P. J.:

The action was replevin for a lot of sewing machines, and the sole question was of the plaintiff's title to the property at the time of the commencement of the action.

The property had been sold to the Rheubottom & Teall Manufacturing Company, of Weedsport, several months before under an agreement that the vendee should give " a good eleven months' note "

for the price when the bill was rendered, and without waiting for the machines to be set up. The note was not given, although a bill was rendered, and the machines were afterwards shipped and set up.

These facts present the first ground of the plaintiff's claim to retake the property, viz.: That the sale was conditional; and that the condition not being performed, title to the property did not pass. The contention is unavailing, because the condition of sale was waived by an unconditional delivery of the property. (*Smith* v. *Lynes*, 1 Seld., 41.) No demand was made for the note when the bill was rendered, nor when the property was delivered, and the delivery was without condition. The plaintiff seeks to account for its failure to insist upon the condition of the sale on the theory of a misunderstanding between two of its own agents. But the fact of an unqualified delivery of the property remains, and the effect is the same, whatever the cause, so long as it was not one for which the vendee was responsible.

The second alleged ground of avoidance of the sale is, that it was procured by fraud, viz.: That the vendee was in failing circumstances at the time, and that he bought the property with the intention not to pay for it; and this was the question chiefly litigated on the trial.

We think the learned court at the circuit was correct in holding that there was not evidence to warrant the submission of that question to the jury. It is well settled that the mere fact of insolvency, though well known to the vendee, and not disclosed to the vendor, does not afford ground for imputing fraud to the former; there must have been the intent when the property was purchased, not to pay for it. (*Coffin* v. *Hollister*, 27 N. Y. St. Rep., 637; *Hotchkin* v. *Bank*, 127 N. Y., 329, and the cases cited.)

The vendee of the property in this case was probably insolvent at the time of the purchase; at least, if that had been the controlling question, it should have been submitted to the jury; but we think there was clearly not evidence which would have warranted the finding that the officers of the company regarded its condition as hopeless, or did not expect that it would continue in business and meet its current liabilities as they should fall due. The evidence indicates that the business was loosely conducted and the books imperfectly kept, but we think it fails to show that the officers were aware of

the actual insolvency of the company at the time of the purchase of the sewing machines, still less that they contemplated a failure before the machines should be paid for.

It only remains to consider two exceptions taken by the plaintiff to rulings of the court on questions of evidence. The plaintiff offered in evidence a written statement signed and verified by the president of the debtor company in July, 1890, about a month before the purchase of the machines of the plaintiff, addressed and delivered to a banking firm in Weedsport, which, on its face, purported to have been made for the purpose of obtaining, at some time, additional credit for the company. There was also the offer to show that the statement contained representations bearing upon the credit of the company which were not true at the time it was made. The evidence was excluded. Its admissibility is contended for under the rule which admits the evidence of other frauds of the same party at about the same time, of a character similar to that under investigation.

We think the ruling was entirely correct in this case, for the reason that in the case of the statement offered in evidence no fraud is shown to have been committed or attempted. Assuming that the statement might have been shown to have been in some respects untrue, there is no evidence nor offer to show that any increase or renewal of credit was given or applied for on the strength of it. This leaves the case quite outside the lines of the rule as stated by any of the authorities. (*Cary* v. *Hotailing*, 1 Hill, 311; *Hall* v. *Naylor*, 18 N. Y., 588; *Miller* v. *Barber*, 66 id., 558.) The rule which admits evidence of one fraud to prove another is at best so exceptional in its character that, although well established, it will not be extended beyond the limits already assigned to it. The case of *Hall* v. *Naylor* (*supra*), which is cited by counsel for the plaintiff, turns upon the point here made, and the evidence was rejected because it did not appear that in the case to which the evidence related a fraud was actually accomplished.

The other exception relates to an offer of the plaintiff to give evidence of the total assets of the debtor company at the time of the failure in December, 1890. The ruling seems to us to have been correct on the ground that the time was too remote from the date of the contract assailed, without the accompanying offer to trace back the transactions of the company so as to show the amount of

its assets at the date of the sale. We think, too, that the ruling may be sustained on the ground that the matter of the offer was already in proof by evidence as definite as any which, so far as appears, could have been produced under the offer.

We find no error committed in the admission or rejection of evidence, and we are clearly of the opinion that, upon the evidence as received, a case was not made which would have justified a finding that the machines in question were purchased with the intent to cheat the plaintiff out of the price.

The motion for a new trial should be denied.

MACOMBER and LEWIS, JJ., concurred.

Motion for a new trial denied, with costs, and judgment ordered for the defendants on the nonsuit.